E. H. LUIKART, RECEIVER OF THE BANK OF GRETNA, APPEL-
LANT, V. JERRY S. MILES, APPELLEE.

271 N. W. 160

FILED JANUARY 25, 1937.   No. 29794.

*F. C. Radke, H. V. Noland* and *Clarence G. Miles,* for appellant.

*Joseph E. Strawn, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and RAPER and CHAPPELL, District Judges.

RAPER, District Judge.

E. H. Luikart, receiver of the Bank of Gretna, Gretna, Nebraska, recovered judgment against Jerry S. Miles in Sarpy county in the sum of $480.18, which was duly transcripted to the district court on April 29, 1935, and on August 23, 1935, an alias execution thereon was issued to the sheriff, who advertised certain property for sale to satisfy the execution. The first publication was had September 6, and the last on October 4, the day of sale was fixed for October 7, 1935, at 10 o'clock a. m. On or about September 19, Jerry S. Miles gave written notice to the

sheriff claiming as his homestead a part of the premises which were described in the notice of sale. Plaintiff filed an application in the district court October 7 for appraisers. It is not shown whether this was before or after the hour fixed for the sale. No action was taken to appoint appraisers. The notice of sale contained the lots claimed as exempt; the sheriff's return discloses that none of the premises claimed as a homestead was sold. The sheriff's return was made on same day of sale.

Mr. Miles filed motion on October 14 to quash the sale, for these reasons: (1) That plaintiff is without right to proceed with the execution and sell the property of defendant, because the indebtedness was paid and satisfied prior to the sale; (2) that on September 9, 1935, plaintiff through his attorney accepted $200 in full settlement and satisfaction of the judgment; (3) that because of said settlement the sheriff was without authority to proceed with said sale; (4) that because of said settlement said sale has been illegally made, and the execution was void; (5) that the sale is an attempt on the part of plaintiff to cheat and defraud defendant.

To these objections plaintiff filed answer and motion to confirm sale. Plaintiff admits that on September 9 defendant paid to H. V. Noland, attorney of Ashland, $200, but which was tendered by defendant as an offer of compromise settlement of the judgment, but that said offer of compromise and settlement was subject to approval of the depositors' committee of the Bank of Gretna, and the order of the court, which defendant knew.

The offer was rejected by the depositors' committee, and on or about September 20, 1935, the defendant personally appeared at the office of the receiver of said bank and was advised that the offer of settlement would not be accepted by him, that there was no consideration for the satisfaction of the judgment, the payment by him being only a part of the debt due, and plaintiff, in order to do equity, tenders to the court the $200. On October 25 a hearing was had to the court and testimony taken.

At the opening of the hearing plaintiff by his attorney tendered to defendant the $200. Defendant objected to the tender and the court sustained the objection. The court asked counsel why the money was not returned sooner, to which counsel replied: "No demand was ever made." The court remarked: "They don't have to make a demand."

The defendant testified that the title to a part of the lots that were sold was in his son's name; that he had talked about a settlement and it was satisfactory to the committee except one member; that he paid $200 to Mr. Noland who gave defendant a "receipt," which was received in evidence and is as follows:

"September 9, 1935

"Received of Jerry S. Miles the sum of $200 as an offer in settlement of judgment of $486.93 upon notes due the Bank of Gretna, Gretna, Nebraska, the judgment being in the name of E. H. Luikart, receiver. In the event the settlement offer is not accepted and approved by the banking department, the above sum will be returned to the said Jerry S. Miles, otherwise the same will be retained in full settlement of his liability to said bank and due releases and receipts issued therefor.

"H. V. Noland,

"Attorney for Bank of Gretna,

"E. H. Luikart, Receiver."

Defendant testified he had no property out of which to pay the judgment and had procured the $200 by a loan on his household goods and clothing. This was for the purpose of showing that he was insolvent. And further that neither the banking department nor Mr. Luikart nor Mr. Noland had offered to return the money to him.

On cross-examination defendant was asked if, at the time the receipt was given, there was any further explanation about the final approval of the settlement. Objection was made, and the court said: "What the court has in mind is if they just took this $200 and held it up until they got a bigger price at the sale." Again defendant was asked if he understood that the offer was subject to the approval

of the depositors' committee, Mr. Luikart and an order of the court. An objection to this was sustained. When asked if he had any knowledge that the offer had been rejected, he answered, "Not very much. Q. Did you have any? A. Not permanent." He admitted he had received a letter from Mr. Noland to Mr. C. G. Miles, counsel for receiver, which defendant was to take to Lincoln, in which letter Mr. Noland asked C. G. Miles to discuss the proposed settlement with Mr. Luikart and defendant. The court rejected this letter with the statement, "Why didn't you return his money to him." The letter should have been admitted. Defendant admitted he took the letter to Lincoln and presented it to Mr. C. G. Miles, and said they discussed the matter for about fifteen minutes. The letter set out a fair statement of the offer of settlement and stated that defendant feels it is the best he can do at present, although he thinks he could pay $100 more in monthly instalments, and requested Mr. C. G. Miles to give defendant every consideration. The defendant in Lincoln met Mr. C. G. Miles and Mr. Luikart and Mr. Downing, who was in the receiver's employ, but he did not testify to anything that was said at that conference.

Mr. Downing, chief of receivership division, testified that defendant came to Lincoln and presented to him and to Mr. C. G. Miles the letter from Mr. Noland, on September 19 or 20, and Mr. Downing told defendant they could not accept the offer of $200 and a note for $100 payable at $25 a month, and that the receiver would proceed with the execution unless he desired to further try to raise money, and offered, if defendant desired to do so, to permit him to pay this $200 as a partial payment on the judgment and give him an extension of time to pay balance, and that, inasmuch as his offer could not be accepted, he was entitled to have his money back and he could go and get it from Mr. Noland or he could leave it with Mr. Noland while he attempted to get more money. Mr. Luikart was not present then, but came in, and defendant was asked to tell his story to Mr. Luikart, and defendant briefly reviewed the

conversation that he had had with Mr. Downing, and Mr. Luikart informed defendant that he could not accept the settlement. Mr. Luikart verified the statements of Mr. Downing. The defendant did not deny these conversations.

From the statements made by the trial judge, he evidently drew the inference that the receiver held the $200 so that, if the property did not bring the amount of the judgment, the $200 would be applied on the judgment, and, further, because the $200 was not at once repaid to defendant it amounted to an acceptance of the offer. There is nothing in the situation that warrants such conclusions.

The receipt that was given on its face is plainly only an offer, which, to become effective, must have the approval of the banking department. The depositors' committee and the receiver both rejected the offer and the defendant knew of such rejection. The reason why the $200 was not at once returned to him is shown in the testimony of Mr. Luikart and Mr. Downing, and they were justified in waiting to see if defendant would be able to pay more on the judgment, or if the defendant found he could not raise more funds that he would so inform them, and ask for return of the money. Furthermore, neither the plaintiff nor his attorney had authority to accept the offer without the order of the court.

Under the terms of the offer he was entitled to a return of his money. That was tendered to him at the time of the hearing. It is evident from the receipt and the letter of Mr. Noland and the conversations at the state house that defendant knew the deposit was only an offer which was not to be binding unless accepted by the receiver. Neither party considered it a settlement and satisfaction of the judgment. The defendant let the sale be made without any objection; he did not inform plaintiff or his attorneys that he could not or would not undertake further to effect a settlement, did not demand return of his money, and, so far as the record shows, the first knowledge plaintiff had of defendant's claim that the judgment debt was satisfied was on October 14 when he filed objections to

the sale. This money was tendered on October 21, and the tender was timely. The retention by plaintiff of the money for a few days, in the absence of a demand or request for its repayment, does not evince an acceptance of the sum as satisfaction of the judgment. Defendant suffered no harm by the short delay.

In appellee's brief it is asserted that notice of homestead was given, and a sale made prior to setting aside of the homestead was void. There are two reasons why that claim cannot be now considered. Such claim was not raised in the objections filed, and the record shows that none of the premises claimed as a homestead was sold.

Appellant asserts that, even if he had accepted the offer, he would have the right to apply the sum as part payment on the judgment, on the principal that there was no consideration for the full satisfaction. In view of the conclusion reached, this claim is not passed on.

The judgment of the district court is reversed, with direction to confirm the sale, and plaintiff to pay $200 into court for the benefit of the defendant.

REVERSED.